UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| JOSEPH A. HERNANDEZ,<br><br>　　　　　　　　Petitioner,<br><br>　　　v.<br><br>LeGRAND, *et al.*,<br><br>　　　　　　　　Respondents. | Case No. 3:17-cv-00697-MMD-WGC<br><br>ORDER |

**I.　SUMMARY**

Petitioner Joseph Hernandez filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. This matter is before the Court for adjudication of the merits of Petitioner's amended petition. (ECF No. 14 ("Petition").) For the reasons discussed below, the Court denies both the Petition and a certificate of appealability.

**II.　BACKGROUND**

Petitioner's convictions are the result of events that occurred in Pershing County, Nevada on, about, or between September 1, 2010 and September 25, 2010. (ECF No. 16-19.) Julieann Rowley testified that the victim, her four-year-old granddaughter, the victim's mother, Rowley's ex-daughter-in-law, and Petitioner, the victim's stepfather, lived with her. (ECF No. 17-2 at 31-32.)

During that time, the victim told Rowley that Petitioner "would touch her vagina." (*Id.* at 34.) And during a forensic interview, the victim stated that Petitioner "'touche[d] her pee pee and [she] show[ed] him [her] naked parts'" on more than one occasion while "they were in her mom's room on the bed." (ECF No. 17-31 at 43-44.) The victim also stated that Petitioner's hand "went inside her pee pee," and he "touched her pee pee with his mouth." (*Id.* at 44.) Later, during an in-custody interview with law enforcement, Petitioner

"admit[ted] to performing sexual acts against" the victim, and during his arraignment, Petitioner stated that he "inappropriately touched" the victim "in a sexual manner" in "her vaginal area" on two separate occasions. (ECF Nos. 16-24 at 11-19; 17-2 at 16.)

Following the entry of Petitioner's guilty plea, Petitioner was convicted of two counts of lewdness with a child under the age of 14 and sentenced to 10 years to life for both counts, running consecutively. (ECF No. 17-1 at 2-3.) Petitioner was also sentenced to lifetime supervision. (*Id.* at 3.) Petitioner appealed, and the Nevada Supreme Court affirmed on February 13, 2013. (ECF Nos. 17-5, 17-12.) Remittitur issued on March 12, 2013. (ECF No. 17-13.)

Petitioner filed his *pro se* state habeas petition on April 17, 2013, and a counseled supplemental petition on November 6, 2013. (ECF Nos. 17-17, 17-31.) Following a post-conviction evidentiary hearing, the state district court denied the petition on September 30, 2016. (ECF Nos. 19-3, 19-9.) Petitioner appealed, and the Nevada Court of Appeals affirmed on October 11, 2017. (ECF Nos. 19-10, 19-42.) Remittitur issued on November 6, 2017. (ECF No. 19-44.)

Petitioner filed his *pro se* federal habeas petition on December 4, 2017, and his instant counseled Petition on December 31, 2018. (ECF Nos. 4, 14.) Petitioner alleges the following violations of his federal constitutional rights:

1. He did not plead guilty knowingly, voluntarily, and intelligently.
2(a). His trial counsel failed to move to suppress his confession, or advise him of his ability to do so, before advising him to accept a plea offer
2(b). His trial counsel failed to adequately investigate prior to advising him to plead guilty.
2(c). His trial counsel failed to provide him with discovery in a timely fashion, such that he was prevented from making a knowing, intelligent, and voluntary decision about proceeding with a plea.

(ECF No. 14.)

Respondents moved to dismiss the claims asserted in Ground 2 on December 31, 2018. (ECF No. 15.) This Court denied the motion on June 4, 2019. (ECF No. 29.) Respondents answered the Petition on August 5, 2019, and Petitioner replied on December 3, 2019. (ECF Nos. 30, 37.)

2

## III. LEGAL STANDARD

28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in habeas corpus cases under the Antiterrorism and Effective Death Penalty Act ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409-10) (internal citation omitted).

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101

3

(2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has stated "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the standard as a "difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt" (internal quotation marks and citations omitted)).

## IV. DISCUSSION

### A. Ground 1

In Ground 1, Petitioner argues that he did not plead guilty knowingly, voluntarily, and intelligently because he did not have an adequate understanding of the law and facts. (ECF No. 14 at 5.) Petitioner contends that he entered his plea based on Rowley's false allegations, which he wrongly believed he was powerless to rebut, and based his decision to plead guilty on a lack of understanding of the law surrounding motions to suppress false confessions. (*Id.*) Regarding the latter contention, Petitioner elaborates that many factors interfered with his cognition at the time of the custodial interrogation—his bipolar disorder, sleep deprivation, and his history of falsely admitting things—and if he had understood his ability to present a colorable suppression claim, he would not have accepted the plea deal. (*Id.* at 6.) In affirming Petitioner's convictions on direct appeal, the Nevada Supreme Court held:

> Appellant Joseph Adrian Hernandez contends that the district court erred by denying his presentence motion to withdraw his guilty plea because it was based on untrue information originating from the victim's grandmother, an invalid confession that he made while sleep deprived and going through the manic stages of his bipolar disorder, and his willingness to admit to things to avoid confrontation with authority figures.
>
> "This Court will not reverse a district court's determination concerning the validity of a [guilty] plea absent a clear abuse of discretion." *Johnson v. State*, 123 Nev. 139, 144, 159 P.3d 1096, 1098 (2007). Here, the district court conducted a hearing on Hernandez's motion. Hernandez testified that he made a hasty decision to enter the guilty plea, did not commit the alleged offenses, and lied to the district court during his plea canvass. The district

4

court found that Hernandez was thoroughly canvassed on his decision to plead guilty and swore under oath that he read, understood, and signed the written plea agreement; understood his rights and voluntarily waived them; and understood the nature of the charges against him, the associated penalties, and the consequences of pleading guilty. The district court further found that Hernandez's testimony at the hearing on his motion was incredible; Hernandez did not meet his burden to show that the guilty plea was invalid; and the totality of the circumstances demonstrated that Hernandez entered his plea intelligently, knowingly, and voluntarily.

The record on appeal supports the district court's factual findings, and we conclude that Hernandez has failed to demonstrate that the district court abused its discretion by denying his presentence motion to withdraw his guilty plea. *See id.* (defendant bears the burden of proving that his plea is invalid).

(ECF No. 17-12 at 2-3.) The Nevada Supreme Court's rejection of Petitioner's claim was neither contrary to nor an unreasonable application of clearly established law as determined by the United States Supreme Court.

Petitioner was originally charged with two counts of sexual assault of a child under 14 years of age and two counts of abuse, neglect, or endangerment of a child. (*See* ECF No. 16-3.) In return for pleading guilty, the State "reduced the charges from sexual assault . . . to lewdness" and dropped the "abuse or neglect of a child" charges. (ECF No.16-24 at 5-6.) Petitioner signed a guilty plea agreement on September 27, 2011, indicating, in part, that he had "discussed with [his] attorney any possible defenses and circumstances which might be in [his] favor" and that he "sign[ed] th[e] agreement voluntarily." (ECF No. 16-25 at 6.) Petitioner's trial counsel also signed the agreement, indicating that "[t]o the best of [his] knowledge and belief, [Hernandez]: . . . [e]xecuted this agreement and will enter all Guilty pleas pursuant hereto voluntarily." (*Id.* at 8.) At Petitioner's arraignment held the same day, Petitioner responded in the affirmative when asked on two occasions if he was pleading guilty "freely and voluntarily." (ECF No. 16-24 at 10, 21-22.) Following a thorough canvass, the state district court found that Petitioner's "pleas have been made freely and voluntarily." (*Id.* at 23.)

Several months later, on January 3, 2012, Petitioner moved to withdraw his guilty plea. (ECF No. 16-31.) A hearing was held on the motion, and Petitioner maintained that

he was innocent. (ECF No. 16-39 at 7-8.) He testified that he made "a hasty decision as far as the entering of the guilty plea" and explained that he has "issues with honesty in regards to when there's authority figures above" him, meaning that "when confronted with something, [he] will pretty must admit to something [he] didn't do just to avoid confrontation." (*Id.* at 8-9.) Petitioner illustrated that he also falsely confessed to having stolen goods and to a burglary charge. (*Id.* at 34-35.) Moreover, at the time of his law enforcement interview, Petitioner's daughter was one-day old, and he was sleep deprived. (*Id.* at 9-10.) Finally, Petitioner testified that he "was pretty much going through a manic stage of [his] bipolar disorder" during his arraignment and that he suffered from a traumatic childhood, namely that he was taken away from his parents as a child because they "were drug addicts" and because he was "being neglected and abused." (*Id.* at 10-11.) The state district court denied the motion to withdraw Petitioner's guilty plea. (*Id.* at 56; *see also* ECF No. 16-40.)

The federal constitutional guarantee of due process of law requires that a guilty plea be knowing, intelligent, and voluntary. *See Brady v. United States*, 397 U.S. 742, 748 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242 (1969); *United States v. Delgado-Ramos*, 635 F.3d 1237, 1239 (9th Cir. 2011). "The voluntariness of [a petitioner's] plea can be determined only by considering all of the relevant circumstances surrounding it." *Brady*, 397 U.S. at 749. Addressing the "standard as to the voluntariness of guilty pleas," the Supreme Court has stated: a "plea of guilty entered by one fully aware of the direct consequences . . . must stand unless induced by threats . . . , misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business." *Id.* at 755 (quoting *Shelton v. United States*, 246 F.2d 571, 572 n.2 (5th Cir. 1957), *rev'd on other grounds*, 356 U.S. 26 (1958)); *see also North Carolina v. Alford*, 400 U.S. 25, 31 (1970) (noting that the longstanding "test for determining the validity of guilty pleas" is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant"); *United States v. Doe*, 155 F.3d 1070, 1074 (9th Cir. 1998) ("A waiver

is voluntary if, under the totality of the circumstances, [it] was the product of a free and deliberate choice rather than coercion or improper inducement."). Although a plea may not be produced "by mental coercion overbearing the will of the defendant," a guilty plea made following "the post-indictment accumulation of evidence [that] convince[s] the defendant and his counsel that a trial is not worth the agony and expense to the defendant and his family" is not "improperly compelled." *Brady,* 397 U.S. at 750 (reasoning that "mental coercion" is only found if the defendant "did not or could not, with the help of counsel, rationally weigh the advantages of going to trial against the advantages of pleading guilty").

First, Petitioner's contention that that he was unaware that he could rebut Rowley's accusations is belied by his signed plea agreement. Indeed, Petitioner's plea agreement provided that he had discussed all possible defenses with his trial counsel. (ECF No. 16-25 at 6.) Second, regarding the motion to suppress, Petitioner's testimony at the hearing held on his motion to withdraw his plea only concerned his mental state and did not allege any police coercion. (*See* ECF No. 16-39.) Therefore, as this Court explains more thoroughly in Ground 2(a), a motion to suppress Petitioner's confession would not have been fruitful. Third, Petitioner received a substantial benefit as the result of pleading guilty: his charges were reduced from sexual assault to lewdness. *See Brady*, 397 U.S. at 750 (explaining that a guilty plea is not rendered invalid when it has been "motivated by the defendant's desire to accept the certainty or probability of a lesser penalty rather than face a wider range of possibilities extending from acquittal to conviction and a higher penalty authorized by law for the crime charged").

Finally, Petitioner confirmed that his guilty plea was voluntary during his thorough canvass by the state district court, and the state district court made specific findings that Petitioner's pleas were freely and voluntarily made. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977) (stating that the defendant's representations, "as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings" and that "[s]olemn declarations in open court carry a strong presumption of verity"); *see also Muth v. Fondren*, 676 F.3d 815, 821 (9th Cir. 2012)

("Petitioner's statements at the plea colloquy carry a strong presumption of truth."); *Little v. Crawford*, 449 F.3d 1075, 1081 (9th Cir. 2006). Accordingly, as the Nevada Supreme Court reasonably determined, after "considering all of the relevant circumstances surrounding" Petitioner's plea, Petitioner fails to demonstrate that his guilty plea was not entered into knowingly, intelligently, and voluntarily. *Brady*, 397 U.S. at 748-49. Petitioner is therefore denied federal habeas relief for Ground 1.

### B. Ground 2

In Ground 2, which includes three subparts, Petitioner claims that his federal constitutional rights were violated because his trial counsel was ineffective. (ECF No. 14 at 8.)

In *Strickland*, the Supreme Court propounded a two-prong test for analysis of claims of ineffective assistance of counsel requiring the petitioner to demonstrate (1) that the attorney's "representation fell below an objective standard of reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). A court considering a claim of ineffective assistance of counsel must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.

Additionally, to establish prejudice under *Strickland*, it is not enough for the habeas petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, the errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. When the ineffective assistance of counsel claim is based on a challenge to a guilty plea, the *Strickland* prejudice prong requires the petitioner to demonstrate "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to

8

trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see also Lafler v. Cooper*, 566 U.S. 156, 163 (2012) ("In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice.").

Where a state district court previously adjudicated the claim of ineffective assistance of counsel under *Strickland*, establishing that the decision was unreasonable is especially difficult. *See Harrington*, 562 U.S. at 104-05. In *Harrington*, the United States Supreme Court clarified that *Strickland* and § 2254(d) are each highly deferential, and when the two apply in tandem, review is doubly so. *Id.* at 105; *see also Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (internal quotation marks omitted) ("When a federal court reviews a state court's *Strickland* determination under AEDPA, both AEDPA and *Strickland*'s deferential standards apply; hence, the Supreme Court's description of the standard as doubly deferential."). The Supreme Court further clarified that, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

In affirming the denial of Petitioner's state habeas petition, the Nevada Court of Appeals held:

> Hernandez first argues the district court did not apply the proper test for claims of ineffective assistance of counsel when it denied his April 17, 2013, petition and his November 6, 2013, supplemental petition. This claim lacks merit. In its order denying the petition, the district court noted the test for ineffective assistance of counsel claims contained in *Strickland v. Washington*, 466 U.S. 668, 694 (1984), and concluded Hernandez did not meet either prong of that test. The district court therefore concluded Hernandez failed to meet his burden to demonstrate his counsel was ineffective during the trial-level proceedings. *See Means v. State*, 120 Nev. 1001, 1012, 103 P.3d 25, 33 (2004). Accordingly, the district court analyzed Hernandez' claims using the proper test and we conclude Hernandez is not entitled to relief.
>
> Second, Hernandez argues the district court erred in concluding his claims hinged upon whether his counsel would have been successful in suppressing his Idaho confession. Hernandez argues he raised multiple issues in his petition and supplemental petition, and the district court should not have concluded those issues were encompassed within one claim. However, the

9

record before this court does not contain copies of Hernandez' postconviction petition or his supplemental petition as required by NRAP 30(b)(2), (b)(3). As the appellant, it was Hernandez' burden to provide this court with an adequate record for review. *See McConnell v. State*, 125 Nev. 243, 256 n.13, 212 P.3d 307, 316 n.13 (2009). Because Hernandez did not include copies of his postconviction petition or his supplemental petition, we are unable to review this claim.

We conclude Hernandez has failed to demonstrate he is entitled to relief.

(ECF No. 19-42 at 2-3.)[1]

As further discussed below, the Nevada Supreme Court's rejection of Petitioner's three ineffective-assistance-of-counsel claims was neither contrary to, nor an unreasonable application of, clearly established law as determined by the United States Supreme Court.

### i. Ground 2(a)

Petitioner alleges that his trial counsel failed to move to suppress his confession or inform him of his ability to do so before advising him to accept a plea offer. (ECF No. 14 at 9.) As was also discussed in Ground 1, Petitioner elaborates that his confession was not voluntary because he was in a manic episode of his bipolar disorder, he was sleep deprived, he had compromised cognitive functioning due to abuse and medical issues as a child, and he had an extensive history of falsely admitting to things to avoid confrontation with authority. (*Id.* at 9-10.) Petitioner contends that had he known there was a potential winning suppression motion available, he would have refused to plead guilty and insisted on litigating the motion. (ECF No. 37 at 13.)

At a deposition taken during Petitioner's post-conviction proceedings, Petitioner's trial counsel testified that he was "aware of case law which indicates that in order to find

---

[1]This Court previously concluded that "[b]ecause Hernandez sufficiently described the factual and legal basis for his claims in his appellate brief, any deficiency in his appendix did not deny the Nevada Court of Appeals of a fair opportunity to act on his claims." (ECF No. 29 at 4 (citing *Boyko v. Parke*, 259 F.3d 781, 789 (7th Cir. 2001) (failure to submit transcript in state proceedings did not render claim unexhausted; transcript did not change the substance of the petitioner's argument, but "merely supplie[d] an additional piece of evidence" supporting the claim).)

an interrogation to be coercive the totality of the circumstances must show that the officer's tactics undermined the defendant's will." (ECF No. 18-14 at 52.) And "based on [his] own assessment of . . . the interview[, he] didn't come to th[e] conclusion" that Hernandez's confession could be meritoriously challenged. (*Id.* at 52-53.) Similarly, at the post-conviction evidentiary hearing, Petitioner's trial counsel testified that "there was nothing coercive or suggestive about the interview." (ECF No. 19-3 at 36.) In fact, Petitioner's trial counsel explained that Petitioner "waive[d] his right and agree[d] to voluntarily speak with them," and while "discussing the matter with them, [Hernandez] never indicated there was anything done" that was coercive. (*Id.* at 41.) The decision to not file a motion to suppress was discussed with Petitioner. (*Id.*)

Contrarily, at the post-conviction evidentiary hearing, Petitioner testified that his trial counsel never "talk[ed] to [him] about suppressing th[e] confession." (ECF No. 19-3 at 4.) Petitioner testified that his confession was not voluntary because (1) he "had been off medication [for his bipolar disorder] for about five years," (2) he "was going through a manic phase with [his] bipolar disorder," (3) his daughter had just been born, and (4) he confessed because he was scared. (*Id.* at 4-5.)

The admission into evidence at trial of an involuntary statement violates a defendant's right to due process under the Fourteenth Amendment. *See Lego v. Twomey*, 404 U.S. 477, 478 (1972); *Jackson v. Denno*, 378 U.S. 368, 376 (1964) ("It is now axiomatic that a defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession"); *see also Dickerson v. United States*, 530 U.S. 428, 444 (2000) (explaining that the requirement that Miranda rights be given prior to a custodial interrogation does not dispense with a due process inquiry into the voluntariness of a confession). However, as Petitioner's trial counsel noted during his deposition, "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Colorado v. Connelly*, 479 U.S. 157, 167 (1986). Therefore, although a defendant's mental state is a "significant factor in the 'voluntariness'

1 calculus,'" it "does not justify a conclusion that a defendant's mental condition, by itself and apart from its relation to official coercion, should ever dispose of the inquiry into constitutional 'voluntariness.'" *Id.* at 164.

Because Petitioner did not—and does not—allege any police coercion, Petitioner's trial counsel accurately testified that a motion to suppress his confession would likely have been futile. As such, Petitioner fails to establish that his trial counsel acted deficiently in not filing the motion prior to advising him to plead guilty. *See Strickland*, 466 U.S. at 688; *see also Premo v. Moore*, 562 U.S. 115, 124 (2011) (determining that the petitioner's counsel's justification for not filing a motion to suppress—"that suppression would have been futile—confirms that his representation was adequate under *Strickland*"); *McMann v. Richardson*, 397 U.S. 759, 772 (1970) ("[A] plea of guilty in a state court is not subject to collateral attack in a federal court on the ground that it was motivated by a coerced confession unless the defendant was incompetently advised by his attorney."). Accordingly, because Petitioner fails to support his ineffective-assistance-of-trial-counsel claim, and because the Nevada Court of Appeals reasonably denied Petitioner relief, Petitioner is denied federal habeas relief for Ground 2(a).

### ii. Ground 2(b)

Petitioner alleges that his trial counsel failed to adequately investigate prior to advising him to plead guilty. (ECF No. 14 at 11.) Petitioner contends that an adequate investigation would have revealed that his accusers—the victim's father's mother and sister—may have coached the victim into identifying him as her abuser to shift any blame away from the victim's father or to assist the victim's father in his custody dispute with the victim's mother. (*Id.* at 11-12.) Petitioner also contends that an adequate investigation may have shown that someone else abused the victim, such as a teenage boy or one of the victim's father's associates. (*Id.* at 12.)

During the victim's forensic interview, in addition to discussing the sexual contact Petitioner had with her, the victim "reported that she 'reached' her mouth to a teenage boy's pee pee while they were 'under his mom's work.'" (ECF No. 17-31 at 43-44.) The

victim indicated that "his mom had a candy store in the front of her house." (*Id.* at 44.) Detective William Dawson testified at Petitioner's sentencing hearing that Rowley, the victim's grandmother, voiced concerns about "an unnamed juvenile male" but that he "was unable to locate any further information on" that person. (ECF No. 17-2 at 23-24, 27.) And in addition to this juvenile male, Dawson also testified that Rowley, who was at least initially uncertain about who might have been sexually abusing the victim, had voiced concerns about "unsavory" individuals associated with the victim's mother and father. (*Id.* at 25; *see also* ECF No. 17-31 at 41.)

At a deposition taken during Petitioner's post-conviction proceedings, Petitioner's trial counsel testified that he did not do any investigating beyond personally "viewing the physical layout of" the candy store where the victim alleged that she had sexual contact with the juvenile male. (*See* ECF No. 18-14 at 51.) And although Petitioner's trial counsel "recall[ed] contacting [his] investigator . . . about the case," he did not request that his investigator conduct any type of investigation "based on the direction that Mr. Hernandez wanted to go with the case." (*Id.*) Indeed, Petitioner "never pointed to exculpatory witnesses," and until after his arraignment, Petitioner never tried to "undercut the notion that he didn't commit this crime." (*Id.* at 64-65.) Moreover, Petitioner "wanted to accept responsibility, to not put . . . his stepdaughter essentially through" the trial process. (*Id.* at 53.)

Similarly, at the post-conviction evidentiary hearing, Petitioner's trial counsel testified that although he reviewed witness interviews conducted by law enforcement, he did not "sit[ ] down with any witness and interview[ ] them" because, at that stage of the proceedings prior to his plea, Petitioner was not claiming that any of the evidence obtained against him was untrue. (ECF No. 19-3 at 42-43.) And regarding the juvenile male, Petitioner's trial counsel explained that this allegation occurred after Petitioner's abuse of the victim occurred, and as such, Petitioner's trial counsel felt that evidence regarding the juvenile male could be viewed as Petitioner grooming the victim to be abused by other individuals. (*Id.*)

13

Defense counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. Additionally, "[i]n any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* This investigatory duty includes investigating the defendant's "most important defense" (*Sanders v. Ratelle*, 21 F.3d 1446, 1457 (9th Cir. 1994)), and investigating and introducing evidence that demonstrates factual innocence or evidence that raises sufficient doubt about the defendant's innocence. *See Hart v. Gomez*, 174 F.3d 1067, 1070 (9th Cir. 1999). "[I]neffective assistance claims based on a duty to investigate must be considered in light of the strength of the government's case." *Eggleston v. United States*, 798 F.2d 374, 376 (9th Cir. 1986).

Petitioner fails to demonstrate that his trial counsel acted deficiently in carrying out his investigative duties. *See Strickland*, 466 U.S. at 688. Indeed, given that Petitioner did not refute the evidence against him and wanted to plead guilty, it was reasonable under the circumstances for Petitioner's trial counsel to have decided that investigating possible defenses was unnecessary. And even if Petitioner's trial counsel acted deficiently, Petitioner fails to demonstrate prejudice. *Id.* at 694.

First, Petitioner fails to demonstrate that an investigation into the victim's father's associates or the victim's father's mother and sister would have led to favorable, admissible evidence. Second, a thorough law enforcement interview of the candy store owner revealed that the juvenile male had moved and was not able to be found and that it was "unlikely that any sexual activity between the male juvenile and [the victim] could have happened in the manner that [the victim] alleged." (ECF No. 18-14 at 75.) It is therefore mere speculation that further investigation by his trial counsel would have resulted in Petitioner not pleading guilty and insisting on going to trial. *See Hill*, 474 U.S. at 59; *see also Djerf v. Ryan*, 931 F.3d 870, 881 (9th Cir. 2019) ("[P]rejudice is not established by mere speculation."). Accordingly, because Petitioner fails to support his ineffective-

assistance-of-trial-counsel claim, and because the Nevada Court of Appeals reasonably denied Petitioner relief, Petitioner is denied federal habeas relief for Ground 2(b).

### iii. Ground 2(c)

Petitioner alleges that his trial counsel failed to provide him with discovery in a timely fashion so that he could make a knowing, intelligent, and voluntary decision about whether to proceed with a plea. (ECF No. 14 at 13.)

At the post-conviction evidentiary hearing, Petitioner testified that he "didn't have knowledge to be able to make an informed decision" regarding his plea because he "did not receive discovery until after [he] entered [his] plea of guilty." (ECF No. 19-3 at 7, 10.) Petitioner, however, admitted that his trial counsel did "bring stuff over to [him] before [his] plea hearing." (*Id.* at 26.) And Petitioner's trial counsel testified that "[d]iscovery rarely comes all at once. It comes in waves," explaining that "[y]ou don't have an absolute right of discovery at the preliminary hearing stage." (*Id.* at 35.) Petitioner's trial counsel "recall[ed] going over discovery items with Mr. Hernandez" on "multiple" occasions. (*Id.*)

Other than pointing to his own self-serving testimony from the postconviction evidentiary hearing, Petitioner fails to present any evidence that his trial counsel failed to provide him discovery in a timely fashion. *See, e.g., Womack v. Del Papa*, 497 F.3d 998, 1004 (9th Cir. 2007) (rejecting an ineffective-assistance-of-trial-counsel claim, in part, because "[o]ther than [the petitioner]'s own self-serving statement, there [was] no evidence that his attorney" acted the way the petitioner alleged); *see also Jones v. Gomez*, 66 F.3d 199, 205 (9th Cir. 1995) (denying habeas relief because the petitioner's "conclusory allegations did not meet the specificity requirement").

Moreover, the state district court found Petitioner's trial counsel credible (*see* ECF No. 19-3 at 51), and Petitioner's trial counsel's testimony directly contradicted Petitioner's testimony regarding the providing of discovery items. *See Rice v. Collins*, 546 U.S. 333, 341-42 (2006) ("Reasonable minds reviewing the record might disagree about the prosecutor's credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination.").

Because Petitioner fails to demonstrate that his trial counsel acted deficiently (*see Strickland*, 466 U.S. at 688), and because the Nevada Court of Appeals reasonably denied Petitioner relief, Petitioner is denied federal habeas relief for Ground 2(c).[2]

## V. CERTIFICATE OF APPEALABILITY

This is a final order adverse to Petitioner. Rule 11 of the Rules Governing Section 2254 Cases requires this Court to issue or deny a certificate of appealability ("COA"). This Court therefore has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002). Under § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). Applying this standard, the Court finds a certificate of appealability is unwarranted.

## VI. CONCLUSION

It is therefore ordered that the petition for a writ of habeas corpus under 28 U.S.C. § 2254 (ECF No. 14) is denied.

It is further ordered that Petitioner is denied a certificate of appealability.

The Clerk of Court is directed to enter judgment accordingly and close this case.

DATED THIS 1st Day of June 2021.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE

---

[2] Petitioner requests that the Court "[c]onduct an evidentiary hearing at which proof may be offered concerning the allegations in [his] amended petition and any defenses that may be raised by respondents." (ECF No. 14 at 15.) Petitioner fails to explain what evidence would be presented at an evidentiary hearing, especially since a thorough evidentiary hearing was held before the state district court. Moreover, the Court has already determined that Petitioner is not entitled to relief, and neither further factual development nor any evidence proffered at an evidentiary hearing would affect the Court's reasons for denying relief. Petitioner's request for an evidentiary hearing is denied.